POOL, d.b.a. EAGLE DRILLING COMPANY *v.* MONAGHAN, CHAIRMAN STATE TAX COMMISSION

No. 42112          October 9, 1961          133 So. 2d 519

*Jack E. Pool,* Natchez, for appellant.

*John E. Stone,* Jackson, for appellee.

McGehee, C. J.

The appellant George E. Pool, doing business as Eagle Drilling Company, brought this action in the Chancery Court of Adams County against the appellee Noel Monaghan, Chairman of the State Tax Commission, to recover a sales tax theretofore paid under an assessment against him; the chancery court denied relief, and this appeal was taken.

The facts are that Sim C. Callon owned a lease on certain lands in Adams County and on April 13, 1959, he wrote a letter of agreement to the appellant under which it was stipulated that the appellant was to drill a well on the leased property to a depth of 6,500 feet. In the letter Callon stated ''In the event said well is completed as a dry hole, I agree to pay to you the sum of $10,000.00.''

In the event a producing oil well was brought in, the appellant was to be conveyed a one-half interest in the Callon lease, and the $10,000 above mentioned was to be paid to the appellant only in the event that the well was completed as a dry hole. That is to say, in the event that the drilling did not result in an oil well at all, the $10,000 was to be paid by Callon to the appellant.

The letter of agreement also referred to certain dry hole contribution letters, one was from the Helenic Oil & Gas Company to Callon agreeing to pay him $3,250 if there was a dry hole, and the other was from Southern Natural Gas Company to Callon agreeing to pay him $2,500 if there was a dry hole.

Pursuant to the letter of agreement from Callon to the appellant, the latter proceeded to drill the well. It was a dry hole, and Callon paid to the appellant the $10,000 agreed upon in such event.

The State Tax Commission assessed the appellant with the sales tax under Section 10110, Code of 1942, Rec. This statute provides, among other things, as follows: ''Upon every person engaging or continuing in this state in the business of contracting * * for a price, commission, fee or wage, there is hereby levied, assessed, and shall be collected a tax equal to one and one-half per cent (1½%) of the total contract price or compensation received from drilling, exploring, testing, or adding to any * * * oil well, * * * when the compensation received exceeds $10,000. The tax imposed in this section is levied upon the prime contractor and shall be paid by him.''

As hereinbefore stated, the appellant paid the tax and sued for a refund. He contends that this was dry hole money or a dry hole contribution, and that the same was not a price, commission, or wage for drilling an oil well; that the payment was not for drilling the well but was due only if the well was not a producer. That is to say, not an oil well at all. The appellant argues that this dry hole money was in the nature of an indemnity rather than a price or fee for drilling the well. He contends that a dry hole contribution includes any payment made by any person to one drilling a well, where the payment is contingent upon completion of the well as a dry hole. He was corroborated by an expert witness in that behalf and their testimony is wholly undisputed in the record.

It is argued that the appellant received no compensation for drilling the well other than an interest in the lease; that, if it was a dry hole, Callon agreed to indemnify the appellant in part for his loss in drilling the dry hole. The appellant does not contend, nor do we hold, that in every case where a well is completed as a dry hole the tax should not apply; but he says that, where the terms of the agreement provide that a sum shall be paid only if the well instead of being an oil well is merely a dry hole, the statute taxing a price or fee for drilling the well is not applicable, since it is really not a price or fee for that purpose but is an indemnity contract, and he relies upon the decision of this Court in the case of Stone v. W. G. Nelson Exploration Co., 211 Miss. 199, 51 So. 2d 279, as an authority sustaining his position.

After a careful consideration of this case and the undisputed testimony, in connection with the case of Stone v. Nelson Exploration Co., supra, we have concluded that the appellant's position is correct.

Moreover, Rule 56 of the State Tax Commission provides that any guaranteed payment is taxable income. It then states: ''Any 'dry hole money' received by a

drilling contractor, which can be substantiated by written evidence, is considered a contribution to indemnify him against loss and is not taxable, except in cases where there is provided a sum of money as a 'dry hole' contribution and a smaller sum in the event of production, then that sum receivable by the drilling contractor in the event there had been production is taxable as gross income." In other words, in the instant case the $10,000 is not a guaranteed payment; it is contingent.

In the Manual of Oil and Gas Terms by Williams and Meyers, dry hole money is defined as being a "sum to be paid in the event a well to be drilled is a dry hole."

Appellee seeks to distinguish the Nelson case on the ground that the taxpayer actually owned the leases involved at the time the drilling began, and not later. However, the taxpayer here had a contractual right to one-half of the lease at the time he began the drilling. We do not think there is any substantive distinction in these two situations. For these reasons, we conclude that the sales tax levied under Section 10,110 does not apply to the present facts, where the taxpayer has a contractual right to an interest in the land on which he is drilling, and he received a dry hole payment in the event of no production. Such a payment is not a price or fee for drilling, but a mere indemnity to cover part of his loss in the operation.

The foregoing quoted administrative rule supports the appellant's contention. It recognizes that dry hole money is for indemnity and is not taxable, except where the agreement provides also for a smaller sum in the event of production.

██ ■ We limit this opinion to the facts of this particular case, just as the opinion in the case of Stone v. Nelson Exploration Co., supra, was limited to the facts in that case. But we think that never-the-less the decision in the Nelson case is in its essential features controlling

here. The decision of the trial court must therefore be reversed and a judgment rendered here for the appellant.

Reversed and judgment here for appellant.

*Kyle, Arrington, Ethridge* and *Rodgers, JJ.,* concur.